**Thomas A. FRIEDLANDER**

v.

**Philip UNION, t/a Union Brothers, The Hecht Company, Wieland's Inc., Kovens Furniture Co. and Lucas Brothers.**

Civ. No. 8616.

United States District Court
D. Maryland.

May 10, 1957.

Clement R. Mercaldo and Marvin Mandel, Baltimore, Md., for plaintiff.

Jesse A. Rose, Baltimore, Md., for Philip Union.

William R. Liberman, New York City, Weinberg & Green, Robert F. Skutch, Jr., and William W. Cahill, Jr., Baltimore, Md., for Hecht Co. and Lucas Bros.

Melvin J. Sykes, Baltimore, Md., for Kovens Furniture Co.

R. DORSEY WATKINS, District Judge.

This is a complaint for patent infringement brought by Thomas A. Friedlander (Friedlander), holder of United States Letters Patent No. 2,615,505, issued on October 28, 1952 to Friedlander, on an application filed October 22, 1948. Infringement by Lucas Brothers (Lucas) and others is alleged. Plaintiff prays that the patent be declared valid and that plaintiff is the owner thereof; that defendants have infringed the patent; that injunctions be issued against the defendants; and for an accounting, costs and attorneys' fees.

Substantially similar answers have been filed by all but one of the defendants, and in addition, Lucas filed a counterclaim for declaratory judgment of invalidity and non-infringement. Lucas has moved for summary judgment dismissing the complaint against it for patent infringement and sustaining its counterclaim for declaratory judgment. It has been agreed that the decision in the Lucas case shall be controlling with respect to the other defendants. The following discussion will therefore be confined to the position of Lucas.

The answer by Lucas admits the jurisdictional averments under United States Code, Title 35 and Title 28, §§ 1338 and 1400. It contains the usual defenses that Friedlander "was not the original, first and sole inventor" in that the alleged invention had been, more than one year prior to the application date of October 22, 1948, fully described and set forth in letters patent and publications; that the alleged invention is devoid of substantial novelty and utility in view of the well-known state of the art; and that

the patent set forth old and familiar products and processes of common knowledge, in general use and knowledge long prior to the invention, and well within the reach and ability of any worker in the field. The answer also alleges limitations of the patent and claims "to such certain particular features that plaintiff is estopped from obtaining a construction thereof as would include any of the products made and sold by" defendant; and that the patent application of plaintiff was not properly examined, but that "the application and examination thereof in the United States Patent Office was hurried, scanty, insufficient and lacking in thoroughness; and that said letters patent No. 2,615,505 were granted without the best available art being cited thereagainst by the Patent Office Examiner."

Lucas also counterclaimed for a declaratory judgment of invalidity and noninfringement.

Lucas filed interrogatories which were answered by plaintiff and then filed its motion for summary judgment on the complaint; the answer of Lucas; its interrogatories and plaintiff's answers thereto; and an affidavit with supporting exhibits.[1] No opposing affidavit or exhibit was filed by plaintiff. The motion was briefed and argued.

The court finds that the pleadings, the plaintiff's answers to interrogatories containing certain admissions, affidavit and exhibits show that there is no genuine issue as to any material fact. That summary judgment may properly be invoked in patent infringement cases on the infringement aspect has been expressly held by the Fourth Circuit, in Smith v. General Foundry Mach. Co., 1949, 174 F. 2d 147, 151, certiorari denied 1949, 338 U.S. 869, 70 S.Ct. 144, 94 L.Ed. 533. The court cited and relied upon decisions of courts in the Second, Third and Sixth Circuits. Of the cited cases, two (Rubin-

stein v. Silex Co., D.C.N.Y.1947, 73 F. Supp. 336 and Brown v. Ford Motor Co., D.C.Mich.1944, 57 F.Supp. 825) involved infringement only. The others involved questions only of invalidity (Allen v. Radio Corporation of America, D.C.Del. 1942, 47 F.Supp. 244; Jno. T. McCoy, Inc. v. Schuster, D.C.N.Y.1942, 44 F. Supp. 499; Juniper Mills, Inc. v. J. W. Landenberger & Co., D.C.Pa.1947, 6 F.R. D. 463), or of both infringement and invalidity (Frederick Hart & Co. v. Recordgraph Corporation, 3 Cir., 1948, 169 F.2d 580, and S. R. Leon, Inc. v. Parfums Schiaparelli, Inc., D.C.N.Y.1940, 35 F. Supp. 641).

The decisions subsequent to Smith v. General Foundry Mach. Co., supra, have approved the use of summary judgment in determining patent validity. Vermont Structural Slate Co., Inc. v. Tatko Brothers Slate Co., Inc., 2 Cir., 1956, 233 F.2d 9, affirming D.C.N.Y.1955, 134 F.Supp. 4; Bobertz v. General Motors Corporation, 6 Cir., 1955, 228 F.2d 94, affirming D.C.Mich.1954, 126 F.Supp. 780; Park-In-Theatres v. Perkins, 9 Cir., 1951, 190 F.2d 137; Davison Chemical Corp. v. Joliet Chemicals, 7 Cir., 1950, 179 F.2d 793; W. E. Plechaty Co. v. Heckett Engineering, Inc., D.C.Ohio 1956, 145 F. Supp. 805.

The court therefore concludes *that summary judgment procedure is applicable to suits involving questions of patent validity as well as questions of infringement.*

In this case the patented structure (as well as the accused one) is relatively simple, and the history in the patent office is clear. No expert testimony is needed, nor could it in any event alter the case made by the record. While fully recognizing the "unusual caution" that should be exercised in granting summary judgment in patent cases, the court concludes that this case is a proper one for such

1. The exhibits consisted of a paper copy of the patent in suit; a drawing of the accused chair and an enlarged sketch of the joint used in connecting the rear legs of the accused chair to the rear slat or strut; copies of the patents cited of

record by the Examiner; copies of six other patents, not mentioned by the Examiner and claimed to show invalidity or lack of invention in plaintiff's patent; and the file wrapper of plaintiff's application.

procedure. Cf. Vermont Structural Slate Company, Inc. v. Tatko Brothers Slate Company, 2 Cir., 1956, 233 F.2d 9, 10.

Plaintiff's patent is for a chair construction. Initially, plaintiff sought the allowance of claims for such construction in which the only significant element was the rearward extension of the lower portion of the rear chair legs so as to prevent contact of the top of the chair back with a wall or other vertical surface. All of the original claims were rejected, some of them after two amendments. Subsequently, four new claims were filed, on which the patent issued.[2] These claims covered said rearward extension in combination with (a) a specific form of joint "including interlocking portions having coacting vertical bearing surfaces and angularly disposed surfaces"; (b) rear legs "having a gradually increasing taper toward" the lower portion with structural members connected thereto at the thickest section of said legs; (c) the rear legs having a curved configuration; (d) the rear portion of the rear legs having curved upper and lower portions; and (e) joint means having coacting vertical bearing surfaces and angularly disposed surfaces, connecting said rear legs and horizontal structural members. A comparison of original claims 1 and 12 with claim 1 in the patent as issued will clearly disclose the limitations inserted by the inventor:

| Original 1 | Patent 1 |
|---|---|
| "A chair construction comprising a frame including a pair of rear legs and a pair of front legs, horizontal structural members connecting said front and rear legs, said rear legs each having an upper portion forming a back and a lower portion extending rearwardly beyond said upper portion so as to prevent contact of said back with a generally vertical surface when said chair is positioned adjacent thereto." | "In a chair construction, a frame for use as a base for upholstery, comprising a pair of front legs and a pair of rear legs, horizontal structural members connecting said front and rear legs, each of said rear legs having an upper portion forming a back and a lower portion forming the support for said frame, said rear legs having a gradually increasing taper extending from said upper portion toward said lower portion, *the rear portion of said rear legs including said upper and lower portions having a curved configuration, said curved lower portion extending rearwardly beyond said curved upper portion* so as to prevent contact of said back with a generally vertical surface when said chair is positioned adjacent thereto, and *joint means including interlocking portions having coacting vertical bearing surfaces and angularly disposed surfaces* resisting a turning moment and *connecting said rear legs and said horizontal structural members at the thickest section of said rear legs,* thereby providing greater rigidity for said frame." |

Original 12

"A chair construction comprising a frame skeleton used as a base for upholstery, said frame skeleton including a pair of rear legs and a pair of front legs, horizontal structural members connecting said front and rear legs, said rear legs each having an upper portion upon which the chair back is formed, and a lower portion extending rearwardly beyond said upper portion whereby contact of the back with a generally vertical surface will be prevented when said chair is positioned adjacent thereto."

Plaintiff, having chosen during the prosecution of his application in the Patent Office, presumably in the interest of a finding of validity, to limit his claims, may not now enlarge for purposes of infringement. Exhibit Supply Co. v. Ace Patents Corp., 1942, 315 U.S. 126, 137, 62 S.Ct. 513, 86 L.Ed. 736; Smith v.

2. Since detailed findings of fact are made in this opinion, only a condensed narration will here be given.

Magic City Kennel Club, Inc., 1931, 282 U.S. 784, 789–790, 51 S.Ct. 291, 75 L.Ed. 707; Shepard v. Carrigan, 1886, 116 U.S. 593, 598, 6 S.Ct. 493, 29 L.Ed. 723; Jones v. Bodaness, 10 Cir., 1951, 189 F.2d 838, 841; see also Imperial Bottle Cap & Mach. Co. v. Crown Cork & Seal Co., 4 Cir., 1905, 139 F. 312, 323.[3]

In this case, plaintiff in reply to interrogatories stated that the accused chair infringed the patent claims in the "specific respect" that "The chair in question has a back, with the rear bottom portion extending rearwardly beyond the rear upper portion, which prevents wall contact above the rear lower portion." He also admitted that the accused structure did not have:

(a) joint means having coacting vertical bearing surfaces and angularly disposed surfaces;

(b) joint means at the thickest section of the rear legs;

(c) rear legs having a curved configuration; or

(d) rear portion of rear legs having curved upper and lower portions.

Defendant's chair thus by admission, as well as by inspection of the patent and exhibit drawings, although having straight rear legs which extend rearwardly beyond the separate back, does not have the other features,[4] including the special joint, found in plaintiff's claims. Defendant's chair has no joint with vertical bearing surfaces and angularly disposed surfaces; no joint at the thickest section of the rear legs; and has straight rear legs, with no curved upper or lower portion.

For infringement of a combination claim, every element of the combination must be embodied in the alleged infringing device. Cimiotti Unhairing Co. v. American Fur Refining Co., 1905, 198 U.S. 399, 410, 25 S.Ct. 697, 49 L.Ed. 1100; Montgomery Ward & Co., Inc. v. Rogers, 4 Cir., 1939, 100 F.2d 721, 722; I. T. S. Rubber Co. v. Essex Rubber Co., 1926, 272 U.S. 429, 444, 47 S.Ct. 136, 71 L.Ed. 335; Lektophone Corporation v. Rola Co., 1930, 282 U.S. 168, 171, 51 S.Ct. 93, 75 L.Ed. 274; Bailey v. Galion Iron Works & Mfg. Co., 4 Cir., 1936, 80 F.2d 805, 807; Walker on Patents (Deller's Ed.) sec. 461, p. 1697.

Here, the omission from the accused device of at least[5] four of the elements in the combination claims of the patent necessitates the conclusion of law that the accused chair does not infringe. The only element of the combination claims specifically claimed by plaintiff to be infringed is the extension of the "rear bottom portion" of the rear legs "rearwardly beyond the rear upper portion". Claims restricted to this element were rejected by the Examiner. Such claims are anticipated by and invalid over the disclosures of the patents to McArthur, Wagner, Dellart, Jones, Reum, Harasty and Rapson, discussed in the Findings of Fact.

The court makes the following Findings of Fact and Conclusions of Law:[6]

### Findings of Fact.

1. The patent in suit, No. 2,615,505 dated October 28, 1952, was issued to

3. This would be true even if (which would not appear to be the case) the Patent Office had been wrong in rejecting the original claims. Boynton v. Chicago Hardware Foundry Co., 7 Cir., 1935, 77 F.2d 799, 801.

4. Plaintiff claimed that the accused chair had "horizontal structural members connecting (said) front and rear legs". The normal interpretation of this language, and that shown by the patent drawings, would be that of a direct connection between the front and rear legs. In the accused chair, horizontal stretchers or struts are connected to the front legs but do not themselves connect with the rear legs. They connect at right angles with a transverse rear slat, that in turn connects with the rear legs; all connections being butt-joined and dowel-pinned.

5. See footnote 4, supra.

6. Proposed Findings and Conclusions were filed and served by Lucas. No counter-proposals were made, and no objections were filed, by plaintiff. The court has made some additions to, and numerous changes in, the Findings and Conclusions proposed by Lucas.

and is owned by plaintiff, a resident of Baltimore, within the State of Maryland.

2. The defendants are either natural or corporate citizens of Maryland, and all have places of business within the State of Maryland within which the alleged acts of infringement of said patent No. 2,-615,505 are charged to have occurred.

3. The court has jurisdiction of the parties and of the causes of action.

4. The patent relates to a chair construction and it was granted with four (4) claims, of which the following Claim 1 is typical:

"In a chair construction, a frame for use as a base for upholstery, comprising a pair of front legs and a pair of rear legs, horizontal structural members connecting said front and rear legs, each of said rear legs having an upper portion forming a back and a lower portion forming the support for said frame, said rear legs having a gradually increasing taper extending from said upper portion toward said lower portion, the rear portion of said rear legs including said upper and lower portions having a curved configuration, said curved lower portion extending rearwardly beyond said curved upper portion so as to prevent contact of said back with a generally vertical surface when said chair is positioned adjacent thereto, and joint means including interlocking portions having coacting vertical bearing surfaces and angularly disposed surfaces resisting a turning moment and connecting said rear legs and said horizontal structural members at the thickest section of said rear legs, thereby providing greater rigidity for said frame."

5. In the specification of the patent in suit, a main object is stated to be the provision of a chair so constructed that the lower ends of rear legs thereof extend rearwardly beyond the back or upper portion of the chair so that when the chair is placed against a wall or other vertical surface, the lower ends of the rear legs will strike the wall adjacent the floor, and prevent contact between the back of the chair and the wall.

6. Another important object is stated to be the provision of a novel connecting joint between the rearwardly protruding rear leg of the chair and the horizontal frame members, which connection will resist the turning moment produced by the rearward protrusion of the rear legs and which will firmly maintain said rear legs in assembled position with the remainder of the frame. The specification describes and the drawings illustrate a number of joints alleged to fulfill this object of the specification.

7. The chair as a whole is shown in Figure 1 of the patent drawing; the rear leg 12 is curved outwardly and rearwardly of the back of the chair, particularly at its lower portion, so that the bottom end 16 of the rear leg will extend rearwardly of the chair back to prevent any contact between the back of the chair and a vertical wall or other surface against which the chair may be placed. One type of joint connecting the horizontal structural members 19, 20 (stretchers or struts) is shown in Figures 1, 2, 4, 5, 6 and 7. Another type of joint is shown in Figures 8, 9 and 10. A third type of joint, a dovetail or keystone joint, is illustrated in Figure 11 of the drawings.

8. Plaintiff, at filing, sought eleven claims from the Patent Office, their scope being summarized as follows:

Claim 1 specified broadly the rearward extension of the lower portion of the rear legs beyond the upper portion thereof.

Claim 2 was similarly broadly drawn, adding the mere functional statement in definition of the joint means as being "capable of withstanding a turning moment".

Claim 3 defined the joint means as "including a plurality of bearing surfaces capable of withstanding horizontal and vertical stresses."

Claim 4 was directed to joint means "including coacting horizontal and vertical bearing surfaces."

Claim 5 was like claim 4, and included the further limitation of interlocking portions having horizontal and vertical bearing surfaces.

Claim 6 was specifically drawn to a joint with H-shaped male portion and T-shaped female portion shown in Figures 1, 4, 5, 6 and 7 of the drawings, as were claims 7 and 8.

Claims 9 and 10 were drawn to the joints shown in Figures 8 to 10 of the drawings.

Claim 11 described the joint as having coacting vertical bearing surfaces and angularly disposed surfaces, as shown in Figure 11 of the drawing.

Claim 12, added after the second rejection of claims 1–11, differs from original claim 1 by referring to the construction as "comprising a frame skeleton used as a base for upholstery", and the formation of a back upon the upper portion of the rear legs.

9. Original claim "1" reads as follows:

"1. A chair construction comprising a frame including a pair of rear legs and a pair of front legs, horizontal structural members connecting said front and rear legs, said rear legs each having an upper portion forming a back and a lower portion extending rearwardly beyond said upper portion so as to prevent contact of said back with a generally vertical surface when said chair is positioned adjacent thereto."

10. The Patent Office Examiner consistently refused to allow any of the eleven (11) claims originally sought, rejecting some on three occasions, and ultimately entered a "Final" rejection.

11. In response to a requirement of the Patent Office Examiner, the plaintiff limited his specific claims to the keystone or dovetail joint of Figure 11 of the patent drawings.

12. Among the patents cited and relied upon by the Patent Office Examiner in support of his rejections were the following prior U. S. patents, all with priority dates more than a year before October 22, 1948, that being the date when the application for the patent in suit was filed:

1. Rouse, No. 464,996, of November 24, 1890;

2. Dalton, No. 602,574, of November 10, 1897;

3. Anderson, No. 904,469, of November 5, 1907;

4. McArthur, No. 2,035,489, of March 5, 1934;

5. Wagner, No. 2,369,930, of January 12, 1943;

6. Morhing, No. 2,510,243, of August 13, 1947.

13. These prior patents all relate to chair or other furniture constructions, and they are in analogous and related arts.

14. In Rouse patent No. 464,996 (DX–3F), there are disclosed rear legs which curve rearwardly for more than half their length, with the lower ends of the rear legs extended rearwardly of the back of the chair, the inherent result of which construction would be to prevent contact between the back of the chair and any wall or other vertical surface against which the chair would be placed, and the Patent Office Examiner so held.

15. Dalton patent No. 602,574 (DX–3A) shows a chair having outwardly curved rear legs having a thickened portion midway of their length. The lower ends of the rear legs are extended rearwardly of the upper ends thereof, and the horizontal connecting stretchers or struts are butt-joined to rear legs at the thickened portion.

16. Anderson patent No. 904,469 (DX–3G) shows the use of dovetail joints, for connecting stretchers or struts between front and rear legs of a chair; certain of the joints being located at a thickened portion of the rear legs of the chair.

17. McArthur patent No. 2,035,489 (DX–3I) shows a chair having rear legs the lower portions of which are extended rearwardly of the back of the chair, thereby preventing contact between the

chair back and any adjacent wall or other vertical surface.

18. Wagner patent No. 2,369,930 (DX–3C) discloses a four-legged seat or stool, the legs being extended downwardly and outwardly from the seat portion with the result that the seat portion would be kept from contact with any adjacent wall or other vertical surface; horizontal stretchers or struts being provided connecting adjacent legs by dovetail or keystone joints.

19. Morhing patent No. 2,510,243 (DX–3K) discloses the use of dovetail or keystone joints for connecting horizontal to vertical components in a shelf construction

20. In rejecting the original claims, as amended, sought by plaintiff the Patent Office Examiner properly held that "only positive structural elements, recited in the claims, determine the patentability thereof."

21. A personal interview was then had between the plaintiff's attorney and the Patent Office Examiner. Thereafter, the plaintiff acquiesced in the "Final" rejection of all the originally submitted claims 1–12, which were rewritten as new claims 13, 14 and 15, and granted as claims 1, 2 and 3.

22. Plaintiff represented these three claims to be allowable:

(a) because they were "directed toward the elected species" of joint means, i. e., the dovetail or keystone joint shown in Figure 11 of the patent drawing;

(b) because in them, "The rear legs have a gradually increasing taper extending from the upper portion of the legs toward the lower portion thereof * * * [with] joint means connecting the rear legs and the structural members at the thickest section of the rear legs";

(c) because in them, "the rear portion of the rear legs has a curved configuration";

(d) because the joint means include "vertical bearing surfaces and angularly disposed surfaces resisting a turning moment", thereby describing the keystone or dovetail joint of Figure 11;

(e) because "the rear portion of the rear legs is curved, the curvature being continuous from the uppermost end to the lowermost end thereof."

23. The plaintiff relied upon each and every one of these elements as a vital part of his chair combination; and it was only after rewriting the claims to include these elements in combination that the patent was granted.

24. After the issuance of the patent on August 22, 1952, with claims 1, 2 and 3, Friedlander applied for an amendment to add present claim 4, stating that it included "the patentable limitations set forth in" the allowed claims; and that "It is submitted that the combination of elements as recited * * * patentably defines over the references of record * * * ."

25. The amendment so proposed was made, and said new claim became claim 4.

26. The accused device of defendant Lucas Brothers (DX–2 and DX–2–A) provides rear legs which are perfectly straight and angle rearwardly and downwardly from the top thereof. The rear legs are not curved; they have no upper curved portion and they have no lower curved portion.

27. The horizontal stretchers or struts provided in the accused device do not extend between the front and rear legs.

28. The horizontal stretchers or struts provided in the accused device are merely butt-joined and dowel-pinned. They do not provide dovetail or keystone joints, and they do not have coacting vertical bearing surfaces and angularly disposed surfaces, or vertical and angular surfaces.

29. The horizontal stretchers or struts provided in the accused device are not connected to the rear legs at the thickest portion thereof, but are connected to a slat or strut which in turns connects the rear legs, being butt-joined and dowel-pinned thereto.

30. Plaintiff has admitted that the accused structure does not have rear legs

"having a curved configuration"—as specified in claims 1, 2, 3 and 4 of the patent; that it does not have joint means connecting rear legs and horizontal structural members having "coacting vertical bearing surfaces and angularly disposed surfaces"—as specified in claims 1 and 3; that it does not have "joint means connecting (said) rear legs and (said) horizontal members * * * (and) including vertical and angular surfaces"—as specified in claim 2; that it does not provide means "connecting (said) rear legs and (said) horizontal structural members at the thickest section of (said) rear legs"—as specified in claims 1, 2, 3 and 4; and, finally, that it does not have rear legs having a curved lower portion extending rearwardly beyond a curved upper portion—as specified in claims 1, 2, 3 and 4.

31. Plaintiff thus admits that the accused device omits all but one of the elements represented by plaintiff to be essential in the combination of elements on which the patent in suit was granted.

32. Plaintiff claims that the accused device infringes his patent only in that "The chair in question has a back, with the rear bottom portion extending rearwardly beyond the rear upper portion, which prevents wall contact above the rear lower portion."

33. Chairs having rear legs with lower portions which extend rearwardly of the back of the chair which prevent contact between the back of the chair and an adjacent wall or other vertical surface, were old and in the public domain for many years prior to plaintiff's earliest date. That element per se could not be and was not patented to plaintiff, and the plaintiff's claims include that element only as a part of the combination of the plurality of elements set forth in the claims in suit. Plaintiff's claims cover only the specific combinations of elements recited, not any one thereof per se.

34. In addition to the patents cited and considered by the Patent Office Examiner, the defendant Lucas Brothers has produced and filed as exhibits a number of prior patent disclosures, all with priority dates more than a year earlier than plaintiff's effective date of October 22, 1948, as follows, which disclosures were not cited of record by the Patent Office Examiner:

Dellert, No. 1,879,126, of April 1, 1930; Jones, No. D–81,366, of June 10, 1930; Reum, No. 2,195,632, of July 30, 1937; Harasty, No. D–137,587, of April 4, 1944; and Rapson, No. D–141,222, of March 24, 1945.

35. Dellert patent No. 1,879,126 (DX–4A) discloses a chair having a slightly curved rear leg with the lower portion thereof extended rearwardly beyond the upper portion which prevents contact between the chair back and a vertical wall or other surface. Horizontal stretchers or struts are screwed to the outer surfaces of the rear legs at a thickened portion thereof.

36. Jones design patent D–81,366 (DX–4B) discloses a chair frame having rear legs extended rearwardly of the back of the chair, thus preventing contact between the chair back and a vertical wall or other surface.

37. Reum patent No. 2,195,632 (DX–4C) discloses a curved rear leg in a chair construction, the lower portion thereof being extended rearwardly thereof, thus preventing contact between the chair back and a vertical wall or other surface.

38. The design patent to Harasty, No. D–137,587 (DX–4D) shows a rear chair leg the lower portion of which extends rearwardly of the back of the chair, thus preventing contact between the chair back and a vertical wall or similar surface.

39. The design patent to Rapson, D–141,222 (DX–4F) shows a chair back leg the lower portion of which extends rearwardly of the back of the chair, thus preventing contact between the chair back and a vertical wall or similar surface. A thickened portion is provided on the rear legs, and Rapson butt joins his horizontal stretchers or struts to the rear legs at said thickened portion.

40. The use of curved rear legs is old in the chair and analogous arts, as is the use of curved rear legs the lower portions of which extend rearwardly of the back of the chair, thus preventing contact between the chair back and a vertical wall or similar surface.

41. To the extent that plaintiff claims that the mere inclusion in a chair of rearwardly extending rear legs to prevent contact between the chair back and an adjacent wall or other vertical surfaces infringes his patent, his claims are anticipated by and invalid over the disclosures of the patents to Rouse, Dalton, McArthur, Wagner, Dellert, Jones, Reum, Harasty and Rapson, all these having priority dates more than a year before the date of plaintiff's application.

42. The use of dovetail or keystone joints connecting horizontal stretchers or struts in chair and analogous constructions is similarly old, as is the provision of joints between horizontal stretchers or struts and thickened portions of rear legs of chairs or vertical components of other articles of furniture.

43. The combination of the old elements and expedients in the chair and analogous arts as aggregated by plaintiff does not result in any new, unexpected or unobvious results.

### Conclusions of Law.

I. The accused structure does not infringe any claim of the patent in suit.

II. Plaintiff's patent, if restricted to a chair construction having a back, with the rear bottom portion extending rearwardly beyond the rear upper portion, is invalid for failure to disclose a patentable invention.

III. The bill of complaint is dismissed.

IV. The counterclaim of the defendant Lucas Brothers is sustained as to non-infringement; and is sustained as to validity to the extent set forth in Conclusion of Law II above, the court expressly leaving open the question of general validity *vel non.*