**DORAN COFFEE ROASTING CO., Inc., Appellant,**

v.

**WYOTT MANUFACTURING CO., Inc., Appellee.**

**No. 5926.**

United States Court of Appeals
Tenth Circuit.
May 19, 1959.

---

James P. Hume, Chicago, Ill., and Horace B. Fay, Jr., Cleveland, Ohio (Gorsuch, Kirgis, Campbell, Walker & Grover, Denver, Colo., were with them on the brief), for appellant.

Frank C. Lowe, Denver, Colo. (A. L. Vogl and William F. Reynard, Denver, Colo., were with him on the brief), for appellee.

Before MURRAH, LEWIS and BREITENSTEIN, Circuit Judges.

MURRAH, Circuit Judge.

This appeal is from a judgment in a patent infringement suit in which the trial court validated Claims 7, 8 and 9; held Claim 8 alone infringed by the accused device, and granted appropriate injunctive relief. See Wyott Mfg. Co. v. Doran Coffee Roasting Co., 160 F.Supp. 644.

The patent in suit relates to an improved conventional type faucet for commercially dispensing liquids from urns and the like. It may be generally described as a cup-like valve chamber having a side inlet and a bottom outlet, with a bonnet-like cover, secured by locking means. The stretchable flanges of a T-shaped diaphragm are clamped between the chamber wall and the bonnet top to seal off the interior of the chamber. The resilient leg or plunger part of the diaphragm extends to the floor of the valve chamber, and by means of spring tension against the top of the bonnet, operates to effectively seal off the outlet and close the faucet. The diaphragm leg is actuated to open the valve by means of a

cammed rockable handle connected to the diaphragm plunger on top of the bonnet.

None of the elements of the device are new to the faucet art. All of them are admittedly old. The essential features of the invention are set forth in the following abridgment of Claim 8 in the appellee's brief: "* * * a cup-like valve chamber, having * * * a funnel-like floor with a central outlet * * * a single T-shaped stretchable diaphragm * * * the extreme end of the leg of the diaphragm being formed convex from the under side in longitudinal cross-section of said leg, said convex end surface being adapted to effect a circular sealing thereby over said outlet and without contacting the outlet by effecting said sealing against the floor portion of the chamber adjacent but spaced from the outlet * * * said tension means normally causes the plunger leg convex surface circular edge to spreadingly seal off said outlet by exerting pressure through the plunger and causing said circular edge thereof to press against the chamber floor around and without contacting the outlet * * *."

■ More specifically, patentability is claimed in the utilization of old elements to achieve a new, useful and novel result by the line contact of the peripheral edges of the concave bottom of the resilient plunger against the chamber floor to spreadingly seal off the outlet without contacting it. Numerous disclosures in the prior art are cited against the patent, one of which (Marchant) was not cited in the Patent Office. In totality, they teach the principle of sealing off the outlet in the faucet valve chamber by means of tension pressure of a resilient plunger against the floor of the chamber. But, the result is thus achieved by a surface-to-surface contact of the plunger with the chamber floor. Even Marchant teaches a surface-to-surface contact by a convex plunger seated on a convex type chamber floor, adjacent the outlet. The whole of the prior art, considered together, as we must (i. e. Baum v. Jones

& Laughlin Supply Co., 10 Cir., 233 F.2d 865), does not disclose or teach the advantages of a line contact followed by a cleaning squeegee action.

■ The appellant denies that the claims in suit describe a resilient plunger or leg bottom with sufficient definiteness to claim it as an essential element of the patent. And, it is of course statutorily incumbent upon the patentee to "particularly point out and distinctly claim the part, improvement or combination which he claims as his invention or discovery." 35 U.S.C. § 33.[1] And see Jones v. Bodaness, 10 Cir., 189 F.2d 838. True, the claim did not specifically speak of a resilient leg bottom, but we think that essential feature is sufficiently explicit in a "T-shaped stretchable diaphragm * * * to spreadingly seal off the said outlet by exerting pressure through the plunger * * *." (See Claim 8).

■ This result, achieved by the line contact against the chamber floor, is new, novel and commercially desirable. It is, we think a distinct contribution to the faucet art—one which would not be obvious to a person having ordinary skill in the art. See 35 U.S.C. § 103. Blish, Mize & Sillman Hardware Co. v. Time Savor Tools, 10 Cir., 236 F.2d 913; Consolidated Electrodynamics Corp. v. Midwestern Instruments, 10 Cir., 260 F.2d 811. We agree to the validity of Claims 7, 8 and 9.

Infringement of Claim 8 turns on the description of the chamber floor adjacent the outlet and against which the patentable line contact is effected. Claim 7 in suit described the chamber floor as "an adjacent shoulder downwardly and inwardly slanting as a cone to the outlet." Claim 8 described it as "a funnel-like floor with a central outlet"; and Claim 9 as "a downwardly slanting funnel-like floor." The patent drawings clearly show a sloping floor. The floor adjacent the outlet in the accused device is admittedly flat. After tracing the file-wrapper history of Claims 7 and 9, in which the patentee had amended his claims to show a

1. Now 35 U.S.C.A. § 112.

downwardly slanting floor, and had emphasized this feature as a distinct advantage over the flat floor prior art, the trial court took the view that the patentee was bound by the description in his claim and could not now assert that the flat floor in the accused device was an infringing equivalent of the slanting floor disclosed in the patent.

The allowed claims in a patent "must be read and interpreted not only in the light of the specifications, but also with its file-wrapper history". Thabet Mfg. Co. v. Kool Vent Metal Awning Corp., 6 Cir., 226 F.2d 207; Bobertz v. General Motors Corp., 6 Cir., 228 F.2d 94. And, it is of the essence of the doctrine of equivalents and file-wrapper estoppel that a patentee may not expand his allowed claims by interpretation to embrace features which he disclaimed in order to overcome objections in the Patent Office. Schriber-Schroth Co. v. Cleveland Trust Co., 311 U.S. 211, 61 S.Ct. 235, 85 L.Ed. 132; Simmons Co. v. A. Brandwein & Co., 7 Cir., 250 F.2d 440; Jones v. Bodaness, supra.

We quite agree with the trial court that the patentee is estopped from now asserting that the flat floor of the accused device is equivalent to the floor described in Claims 7 and 9. But, contrary to the trial court's view, we think the patentee is likewise estopped from asserting that the "funnel-like" floor described in Claim 8 is the equivalent of the flat floor in the accused device. None of the original claims described a slanting or sloping chamber floor. As original Claim 8, Claim 7 merely spoke of a chamber with an outlet. After original Claim 8 was rejected "as being directly readable on Evleth" (No. 2,216,292), it was rewritten as new Claim 35 to describe a chamber having an adjacent shoulder downwardly and inwardly slanting as a cone to the outlet. At the same time, present Claim 8 was introduced as Claim 37. As first written, it described a cuplike valve chamber having an inlet and outlet, and was later amended to show a "funnel-like floor with a central outlet."

And, dependent Claim 38 also described the chamber floor as "formed to slant from all sides slightly toward the downwardly adjacent said outlet." In urging the acceptance of the claims as amended and added, the convex surface of the T-shaped diaphragm was emphasized as a novel accomplishment; and the Patent Office was also urged to take note that the chamber floor "slants from every point downwardly toward the outlet, and the said periphery of the convex surface is designed to effect the valve seat against that kind of slanting surface"; and that "none of the references have these features."

After the claims in suit as thus amended were denied, they were apparently regrouped and reurged as Claims 35, 37 and 39, and in urging their adoption, counsel was careful to point out that none of the patents cited in the prior art have a downwardly slanting chamber floor; and that "applicant has a self-draining downwardly slanting floor to his chamber—a cone-shaped or funnel-like floor." Speaking specifically of Claim 37, now Claim 8, emphasis was placed "on the novel sloping floor and diaphragm construction in a specific manner being automatically drainable valve chamber." At the same time counsel emphasized "the flexibility of his diaphragm co-acting with the downward slanting funnel-like floor. * * *."

It was upon these representations that Claims 35, 37 and 39 were ultimately allowed as Claims 7, 8 and 9. While the "funnel-like floor" in Claim 8, when considered in its dictionary sense, might conceivably include a flat bottom, it is certainly thought of as a conical shaped device. In any event, it is abundantly clear to us that the patentee intended to claim a conical shape or sloping floor in Claims 7, 8 and 9; and that a sloping floor was deemed an essential feature of his device and influenced the Patent Office to allow the claims. Having thus represented his device, both in connection with his claims and his drawings, he cannot now recap-

ture what he gave up in order to get the patent.

The judgment of the trial court is accordingly modified to hold the patent valid and uninfringed.